ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF BEAUFORT ) | C/A NO. 2019-CP-07-_____ |
| ) | |
| STONEWORKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | SUMMONS |
| ) | |
| EVANSTON INSURANCE COMPANY, ) | *(Jury Trial Demanded)* |
| ) | |
| Defendant. ) | |

TO:   THE DEFENDANT ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at his offices located 1 Wesley Drive, Ste. 1-B, Charleston, South Carolina 29407, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint and judgment by default will be rendered against you.

    Sean Michael Bolchoz, Esquire
    BOLCHOZ LAW FIRM, PA
    PO Box 828
    6 Buckingham Plantation Drive, Suite B,
    Bluffton, SC 29910
    Tel.: (843) 836-3033
    Email: sbolchoz@bolchozlaw.com

and

PETERS, MURDAUGH, PARKER,
    ELTZROTH & DETRICK, P.A.

BY:   */s/ Bert G. Utsey, III*
    Bert G. Utsey, III, SC Bar No. 10093
    Post Office Box 30968 (29417)
    1 Wesley Drive, Ste. 1-B
    Charleston, South Carolina 29407
    Phone: (843) 549-9544
    Email: butsey@pmped.com

February 19, 2019          Attorneys for Plaintiffs

EXHIBIT A

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF BEAUFORT | ) | C/A NO. 2019-CP-07-_____ |
| STONEWORKS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | COMPLAINT |
| EVANSTON INSURANCE COMPANY, | ) | *(Jury Trial Demanded)* |
| Defendant. | ) | |

Plaintiff alleges:

1. Plaintiff ("StoneWorks") is a South Carolina corporation with its principal place of business on Hilton Head Island, Beaufort County, South Carolina.

2. Defendant ("Evanston") is an insurance company organized under the laws of another state, is authorized to write insurance policies in this state as an eligible surplus lines insurer, and has issued policies covering property and interests in Beaufort County, South Carolina.

3. At all times relevant herein, Markel Service, Inc. ("Markel") was authorized by Evanston to act and was in fact acting as Evanston's claims service manager; as such, Markel was, at all times relevant herein, Evanston's agent acting within the scope of its agency.

4. Through Harbor Light Insurance and Wealth Advisors, LLC, as agent, and Burns & Wilcox, Ltd., as producer, StoneWorks purchased an insurance policy issued by Evanston, policy number MKLV11XP004980, with effective coverage dates of September 1, 2016 to September 1, 2017 ("the Evanston Policy").

5. The Evanston Policy included, among other coverages, Commercial Property Coverage, Building and Personal Property Coverage, Business Income Extra Expense Coverage,

and Commercial Property Plus Enhancement Endorsements. A copy of the Evanston Policy is attached hereto as Exhibit A and is incorporated herein by reference.

6. The Evanston Policy insured StoneWorks' business premises on Hilton Head Island.

7. The Evanston Policy was not delivered to StoneWorks until after October 8, 2016.

8. On October 3, 2016, as Hurricane Matthew began approaching landfall in South Carolina, StoneWorks began implementing its disaster preparedness plan at its Hilton Head Island business premises and incurred substantial expenses to vacate its business premises.

9. Due to and as part of that plan, StoneWorks ceased all operations at its Hilton Head Island business premises at noon on October 4, 2016.

10. In anticipation of Hurricane Matthew's landfall, the State of South Carolina issued an evacuation order for Hilton Head Island which went into effect on October 5, 2016 at 3:00 p.m.

11. Numerous substations, power lines, water treatment facilities, and other utility properties on Hilton Head Island were damaged in the overnight hours of October 7, 2016 into the early morning hours of October 8, 2016 as Hurricane Matthew passed by the island en route to its landfall on the South Carolina coast.

12. Before, on, and after October 8, 2016, StoneWorks' business sustained financial losses as a result of Hurricane Matthew.

13. The State of South Carolina lifted its evacuation order for Hilton Head Island on October 11, 2016 at 3:00 p.m., subject to some restrictions.

14. Hilton Head Island's water supply remained affected by Hurricane Matthew and subject to a boil water advisory until Friday, October 14, 2016.

15. Due to the mandatory evacuation as well as damages and other effects from the storm (including the interruption of electrical, water, telephone, and internet utilities, all of which are

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

necessary for its operations), StoneWorks was unable to resume its operations until Monday, October 17, 2016, on a limited basis.

16. During the week of October 17, 2016, StoneWorks' production was limited to 21.95 of its normal 40 hours.

17. The Evanston Policy was in effect at the time of Hurricane Matthew.

18. Following Hurricane Matthew, StoneWorks contacted Markel to make a claim under the Evanston Policy for various losses it sustained as a result of Hurricane Matthew.

19. StoneWorks provided all requested information and documentation to Evanston to process its claims under the Evanston Policy, including documentation supporting its business losses.

20. In response, Evanston paid StoneWorks $17,670.22 for extra expense benefits under the Evanston Policy.

21. Markel initially claimed that any benefits payable under the Evanston Policy – including business income losses and extra expenses – were subject to a 20% deductible.

22. StoneWorks wrote to Markel on June 28, 2018 (copy attached hereto as Exhibit B) requesting that it not apply a 20% deductible to StoneWorks' Hurricane Matthew claim and that it make full payment to StoneWorks for its Hurricane Matthew losses.

23. Markel responded via letter to StoneWorks dated July 11, 2018 (copy attached hereto as Exhibit C), in which Markel for the first time acknowledged that no deductible applied to StoneWorks' claim but denied payment of any further benefits under the Evanston Policy.

24. StoneWorks supplemented its Hurricane Matthew claim via its attorney's letter to Markel dated December 3, 2018 (copy attached hereto as Exhibit D and incorporated herein by reference).

25. Markel received the December 3, 2018 letter attached hereto as Exhibit D.

26. Evanston received the December 3, 2018 letter attached hereto as Exhibit D.

27. Evanston has not responded to the December 3, 2018 letter or given any other reason for its refusal to pay benefits under the Evanston Policy as requested in that letter.

28. Other than the extra expense payment, Evanston has refused to provide StoneWorks with any benefits under the Evanston Policy for Hurricane Matthew losses despite due demand by StoneWorks.

AS A FIRST CAUSE OF ACTION
*(Breach of Contract)*

29. StoneWorks realleges the allegations of the foregoing paragraphs as if fully set forth herein.

30. The Evanston Policy provides coverage for StoneWorks' loss of business income caused by StoneWorks' inability to access its business premises due to the State's evacuation order of Hilton Head Island, which constituted an action of civil authority.

31. The Evanston Policy provides coverage for StoneWorks' extended loss of business income caused by StoneWorks' inability to resume its normal operations after it was able to return to its business premises the State lifted its evacuation order of Hilton Head Island.

32. The Evanston Policy provides coverage for StoneWorks' expenses incurred in vacating its premises due to the impending emergency of Hurricane Matthew and the State's resulting evacuation order of Hilton Head Island.

33. Evanston's refusal to pay benefits under the Evanston Policy for StoneWorks' business income loss, extended loss of business income, and emergency vacating expenses as a result of Hurricane Matthew was a breach of that contract because these losses were covered under the Evanston Policy and subject to no deductible.

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

34. As a direct and proximate result of said breach of contract by Evanston, StoneWorks has suffered and continues to suffer pecuniary losses and damages including, without limitation, interest due on sums that should have been paid under the Evanston Policy.

35. StoneWorks is entitled to a judgment against Evanston for actual damages due to its breach of contract.

36. StoneWorks is also entitled to an award against Evanston for its attorneys' fees pursuant to S.C. CODE ANN. § 38-59-40 (1976, as amended).

## AS A SECOND CAUSE OF ACTION
*(Bad Faith)*

37. StoneWorks realleges the allegations of the foregoing paragraphs as if fully set forth herein.

38. Under the Evanston Policy, Evanston owed to StoneWorks a duty to act in good faith and to deal fairly.

39. Evanston breached its duty of good faith and fair dealing in one or more of the following ways:

   a. In failing to investigate the subject loss and to evaluate StoneWorks' covered losses properly;

   b. In failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims such as the claim for the subject loss;

   c. In refusing to pay to StoneWorks insurance benefits based upon actual damages and losses incurred by it which were covered under the Evanston Policy;

   d. In attempting to apply to StoneWorks' claim a deductible that it only acknowledged was inapplicable after StoneWorks challenged its application;

   e. In placing its own interests ahead of those of its insured, StoneWorks;

   f. In failing to attempt in good faith to effect prompt, fair, and equitable settlement of StoneWorks' claim when its liability under the Evanston Policy had become reasonably clear; and

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

  g. In negligently, recklessly, unreasonably, without just cause, and/or in bad faith refusing to pay benefits due under the Evanston Policy.

40. By reason of Evanston's conduct, StoneWorks directly and proximately suffered actual damages including, but not limited to, loss of insurance benefits, unreimbursed expenses, loss of the benefit of its bargain in purchasing the Evanston Policy, and consequential damages.

41. StoneWorks is entitled to a judgment against Evanston for benefits due under the Evanston Policy as well as its other actual damages.

42. Evanston's conduct also warrants an award of punitive damages.

WHEREFORE, StoneWorks prays for judgment against Evanston for actual damages, punitive damages, and attorneys' fees, and such other relief as the Court may deem reasonable and proper.

            Sean Michael Bolchoz, Esquire
            BOLCHOZ LAW FIRM, PA
            PO Box 22650
            Hilton Head Island, SC 29925
            (843) 836-3033
            sbolchoz@bolchozlaw.com

            and

            PETERS, MURDAUGH, PARKER,
             ELTZROTH & DETRICK, P.A.

BY: */s/ Bert G. Utsey, III*
    Bert G. Utsey, III
    SC Bar # 10093
    1 Wesley Drive, Suite 1-B
    Charleston, SC 29407
    P.O. Box 30968 (29417)
    (843) 549-9544
    butsey@pmped.com

            Attorneys for Plaintiff

February 19, 2019
Charleston, South Carolina

# EXHIBIT A

# Evanston Policy

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

A STOCK COMPANY



**MARKEL**

# EVANSTON INSURANCE COMPANY

10 Parkway North
Deerfield, IL 60015

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (Insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (Insurer) identified in the Declarations.

*Kathleen Anne Sturgeon*
Secretary

*[signature]*
President

MJIL 1000 08 10                                              Page 1 of 1



INTERLINE

# PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit our websites; however, this information may be requested in order to provide the products and services described. We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. We only use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or former customers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or
- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law. We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.

*Residents of California:*

You may request to review and make corrections to recorded non-public personal information contained in our files. A more detailed description of your rights and practices regarding such information is available upon request. Please contact your agent/broker for instructions on how to submit a request to us.

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352



**MARKEL®**

# EVANSTON INSURANCE COMPANY

## COMMON POLICY DECLARATIONS

POLICY NUMBER: MKLV11XP004980   RENEWAL OF POLICY: New

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)

STONEWORKS INC.
PO BOX 24097

HILTON HEAD ISLAND    SC 29925

**THIS COMPANY HAS BEEN APPROVED BY THE DIRECTOR OR HIS DESIGNEE OF THE SOUTH CAROLINA DEPARTMENT OF INSURANCE TO WRITE BUSINESS IN THIS STATE AS AN ELIGIBLE SURPLUS LINES INSURER, BUT IT IS NOT AFFORDED GUARANTY FUND PROTECTION.**

Policy Period: From September 1, 2016 to September 1, 2017, at 12:01 A.M. Standard Time at your mailing address shown above.

BUSINESS DESCRIPTION:

| FORM OF BUSINESS |
|---|
| ☐ Individual  ☐ Joint Venture  ☐ Partnership  ☐ Organization (other than Partnership or Joint Venture)  ☐ Limited Liability Company  ☐ Corporation  ☐ Other |

Audit Period: Annual unless otherwise stated:    FTZ Code:

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S), BUT ONLY FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| Coverage | | Premium |
|---|---|---|
| Commercial Property Coverage Part | 6-2000 | $ 37,720.00 |
| Commercial General Liability Coverage Part | | $ |
| Commercial Inland Marine Coverage Part | | $ |
| Commercial Ocean Marine Coverage Part | | $ |
| Commercial Professional Liability Coverage Part | | $ |
| Commercial Automobile Liability Coverage Part | | $ |
| Liquor Liability Coverage Part | COINSURANCE CLAUSE APPLIES | $ |
| Crime Coverage Part: | | $ |
| Other Coverages: Terrorism | FLOOD EXCLUDED | $ Not Covered |
| | | $ |
| | **Premium Total** | $ 37,720.00 |
| Other Charges: | | $ |
| | Inspection Fee | $ 500 |
| | | $ |
| | | $ |
| State Surplus Lines License # | **GRAND TOTAL** | $ 38,220.00 * |

*Plus $500 Policy Fee
+ $2,323.20 S/L Tax
= $41,043.20 Total

**Producer Number, Name and Mailing Address**

Burns & Wilcox, Ltd.
14120 Ballantyne Corporate Place Suite 5

Charlotte    NC 28277

Inspection Ordered: Yes X  No
Program Code:

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

MDIL 1000 08 11    Page 1 of 2

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352



# EVANSTON INSURANCE COMPANY

## NOTICE TO POLICYHOLDERS
## CLAIM REPORTING

Please immediately report a new claim under this policy to:

newclaims@markelcorp.com

For general claims inquiries after a claim has been reported, please email:

markelclaims@markelcorp.com

In order for us to expedite the handling of your claim and quickly refer it to the appropriate party, please have the following information available:

- Claim number (or report as new)
- Your name, contact information and position with the Named Insured
- Date of loss
- Policy number and insured name
- Details of loss

Our address and additional contact information are as follows:

Markel Claims
P.O. Box 2009
Glen Allen, VA 23058-2009
Phone: 800-362-7535 (800) 3MARKEL
Fax: 855-662-7535 (855) 6MARKEL

Markel understands the importance of having knowledgeable claims professionals prepared to answer your questions with personal attention and expertise. With claims professionals located across four times zones, you are sure to find the claims assistance you need -- when you need it.

**PLEASE REFER TO THE POLICY FOR ANY NOTICE AND REPORTING PROVISIONS AND DUTIES IN THE EVENT OF LOSS OR DAMAGE TO COVERED PROPERTY.**

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

### Endorsements

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

SEE SCHEDULE OF FORMS ATTACHED.

These declarations, together with the Policy Conditions and Coverage Form(s) and any Endorsement(s), complete the above numbered policy.

Countersigned: _____  By: _____
Date 08/11/2016                                   AUTHORIZED REPRESENTATIVE



**INTERLINE**
Policy Number: MKLV11XP004980

# EVANSTON INSURANCE COMPANY
## FORMS SCHEDULE

| Form Number | Form Name |
|---|---|
| MJIL 1000 08 10 | POLICY JACKET |
| MPIL 1007 03 14 | PRIVACY NOTICE |
| MPIL 1074 07 14 | NOTICE TO POLICLYHOLDERS CLAIM REPORTING |
| MDIL 1000 08 11 | COMMON POLICY DECLARATIONS |
| MDIL 1001 08 11 | FORMS SCHEDULE |
| IL 02 49 09 08 | SOUTH CAROLINA CHANGES - CANCELLATION AND NONRENEWAL |
| MEIL 1200 01 10 | SERVICE OF SUIT |
| MDCP 1003 09 14 | COMMERCIAL PROPERTY COV PART DECLARATIONS |
| CP 00 10 10 12 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM |
| CP 00 30 10 12 | BUSINESS INCOME EXTRA EXPENSE COV FORM |
| CP 10 30 10 12 | CAUSES OF LOSS - SPECIAL FORM |
| MECP 1212 09 14 | ASBESTOS LIMITATION |
| MECP 1215 09 14 | ADDTL PROPERTY EXCLUSIONS CONDITIONS |
| MECP 1227 02 11 | EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT |
| MECP 1257 01 15 | OCCURRENCE LIMIT OF INSURANCE - PRIMARY INSURANCE |
| MECP 1271 09 14 | EARTHQUAKE DEFINITION |
| MECP 1273 09 14 | MINIMUM EARNED PREMIUM EXPOSURE TO HURRICANES |
| MECP 1278 09 14 | COMMERCIAL PROPERTY PLUS ENHANCEMENT |
| MECP 1304 01 15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| MECP 1317 09 14 | EXCL - BIOLOGICAL RADIOLOGICAL CHEMICAL MATERIALS |
| MECP 1318 09 14 | EXCLUSION - FLOOD |

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

IL 02 49 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraphs 2. and 3. of **Cancellation** Common Policy Condition are replaced by the following:

  2. We may cancel this policy by mailing or delivering to the first Named Insured and the agent, if any, written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

  3. We will mail or deliver our notice to the first Named Insured's and agent's last known addresses.

B. The following is added to the **Cancellation** Common Policy Condition:

  7. **Cancellation Of Policies In Effect For 120 Days Or More**

    If this policy has been in effect for 120 days or more, or is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    a. Nonpayment of premium;

    b. Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy;

    c. Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy;

    d. Substantial breaches of contractual duties, conditions or warranties; or

    e. Loss of our reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil our solvency or place us in violation of the insurance laws of South Carolina.

    Prior to cancellation for reasons permitted in this Item **e.**, we will notify the Commissioner, in writing, at least 60 days prior to such cancellation and the Commissioner will, within 30 days of such notification, approve or disapprove such action.

    Any notice of cancellation will state the precise reason for cancellation.

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

1. We will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

2. If we decide not to renew this policy, we will:

    a. Mail or deliver written notice of nonrenewal to the first Named Insured and agent, if any, before:

       (1) The expiration date of this policy, if the policy is written for a term of one year or less; or

       (2) An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term; and

    b. Provide at least:

       (1) 60 days' notice of nonrenewal, when nonrenewal is to become effective between November 1 and May 31; or

       (2) 90 days' notice of nonrenewal, when nonrenewal is to become effective between June 1 and October 31.

3. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last known addresses. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Any notice of nonrenewal will state the precise reason for nonrenewal.



INTERLINE

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT

Except with respect to any policy issued in any state in which the Insurer is licensed as an admitted Insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Midwest, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352



# EVANSTON INSURANCE COMPANY

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

POLICY NUMBER: MKLV11XP004980      ☐ "X" If Supplemental Declarations Is Attached

### Description Of Premises

| Prem. No. | Bldg. No. | Location Address |
|---|---|---|
| ALL | ALL | As Per Schedule of Values on file with the Company |
| | | |
| | | |
| | | |
| | | |

### Coverages Provided
Insurance at the described premises applies only for coverage for which a limit is shown.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes Of Loss | Valu-ation | Co-insurance** |
|---|---|---|---|---|---|---|
| ALL | ALL | Building | $ 980,000 | Risks of Direct Physical Loss or Damage including Earthquake, excluding Flood. | RC | 80% |
| ALL | ALL | Business Personal Property | $ 1,456,600 | Risks of Direct Physical Loss or Damage including Earthquake, excluding Flood. | RC | 80% |
| ALL | ALL | Business Income with Extra Expense | $ 4,203,132 | Risks of Direct Physical Loss or Damage including Earthquake, excluding Flood. | ALS | |
| ALL | ALL | Equipment | $ 184,801 | Risks of Direct Physical Loss or Damage including Earthquake, excluding Flood. | RC | 80% |
| | | | $ | | | |
| | | | $ | | | |

*AA-Agreed Amount; ACV-Actual Cash Value; ALS-Actual Loss Sustained; RC-Replacement Cost
**If Extra Expense Coverage, Limits On Loss Payment

### Loss Limit And Participation

| Loss Limit: | $ | Per Occurrence |
|---|---|---|
| Participation: | % of $ | Per Occurrence |

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

## Optional Coverages

Applicable only when entries are made in the schedule below.

| Prem. No. | Bldg. No. | Description |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

## Other Provisions

**Deductible(s):** 5% of total insured values at time of loss per location per unit – Earthquake
2% of total insured value at time of loss per location per unit – Windstorm
$5,000 per occurrence – Fire/AOP
$5,000 per occurrence – Tornado/Hail

## Mortgageholders

| Prem. No. | Bldg. No. | Mortgageholder Name And Mailing Address |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## Deductible

$ See Other Provisions
[X] Per Occurrence   [ ] Per Location   [ ] Per Building   [ ] Exceptions:

## Premium

Total Premium For This Coverage Part:   $   37,720.00

## Endorsements

Forms and Endorsements applying to this Coverage Part and made part of this
SEE FORMS SCHEDULE – MDIL 100

These declarations, together with the Common Policy Condition
Endorsement(s), complete the above numbered policy.

ELECTRONICALLY FILED - 2019 Feb 19 5:46 PM - BEAUFORT - COMMON PLEAS - CASE#2019CP0700352

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. Definitions**.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2. Property Not Covered**, if a Limit Of Insurance is shown in the Declarations for that type of property.

a. **Building**, meaning the building or structure described in the Declarations, including:
   (1) Completed additions;
   (2) Fixtures, including outdoor fixtures;
   (3) Permanently installed:
       (a) Machinery; and
       (b) Equipment;
   (4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:
       (a) Fire-extinguishing equipment;
       (b) Outdoor furniture;
       (c) Floor coverings; and
       (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;
   (5) If not covered by other insurance:
       (a) Additions under construction, alterations and repairs to the building or structure;
       (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

b. **Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:
   (1) Furniture and fixtures;
   (2) Machinery and equipment;
   (3) "Stock";
   (4) All other personal property owned by you and used in your business;
   (5) Labor, materials or services furnished or arranged by you on personal property of others;
   (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:
       (a) Made a part of the building or structure you occupy but do not own; and
       (b) You acquired or made at your expense but cannot legally remove;
   (7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

c. **Personal Property Of Others** that is:
   (1) In your care, custody or control; and
   (2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.